UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DELESA M.,[1]  <br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Case No.: 4:18-cv-00158-SEB-DML<br>)<br>)<br>)<br>)<br>)<br>) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Delesa M. is not disabled.

## **Introduction**

Delesa applied in April 2015 for Disability Insurance Benefits and in March 2016 for Supplemental Security Income disability benefits under Titles II and XVI,

---

[1] To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

respectively, of the Social Security Act, alleging she has been disabled since November 21, 2013. Acting for the Commissioner following a hearing on July 18, 2017, administrative law judge Robert W. Flynn issued a decision on November 2, 2017, that Delesa is not disabled. The Appeals Council denied review of the ALJ's decision on June 27, 2018, rendering the ALJ's decision for the Commissioner final. Delesa timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Delesa contends that the ALJ erred in three respects. She asserts that the ALJ did not (1) properly account in the RFC for the effects of her impairments on her mental abilities to concentrate, persist, and maintain pace; (2) give proper weight to limitations addressed by treating physicians; and (3) ask the vocational expert about the consistency of her testimony with the Dictionary of Occupational Titles.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Delesa's assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Delesa is disabled if her impairments are of such severity that

she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her

impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence

in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Delesa was born in 1970, was 43 years old at her alleged onset date in November 2013, and was 47 years at the time of the ALJ's decision. Delesa worked for nearly 10 years as a secretary and also had significant work experience as a nursing assistant.

At step one, the ALJ found Delesa had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ identified the following as severe impairments: degenerative disk disease of the lumbar and cervical spines, scoliosis, lumbar spondylosis, sciatica, fracture of the pelvis, osteoarthritis of the bilateral knees, Baker's cyst in the right knee, chronic pain syndrome, malabsorption syndrome, venous insufficiency in the lower extremities, venous hypertension, bilateral varicose veins, obesity, major depressive disorder, anxiety disorder, and alcohol abuse in remission. (R. 14). At step three, he found that no listings were met or medically equaled. Delesa does not challenge the ALJ's determinations at steps one through three.

The ALJ next determined Delesa's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. He restricted

Delesa to a reduced range of sedentary work (six hours of sitting, up to two hours of standing and/or walking, and lifting no more than 10 pounds occasionally) with a sit/stand option (changing positions every 15-30 minutes) and additional handling, reaching, postural, and climbing restrictions. Finally, he limited Delesa to "simple, routine and repetitive tasks" performed in a low-stress environment, "defined as free of fast-paced production requirements" and involving only simple work-related decisions and few, if any workplace changes. He also restricted her interactions with others by forbidding interactions with the general public and limiting interactions with supervisors and coworkers to only occasionally. (R. 16).

At step four and based on the RFC and the testimony of a vocational expert, the ALJ determined that Delesa cannot perform any of her past relevant work, which demanded higher exertion levels (either light or medium) and higher skill levels (either skilled or semi-skilled). He determined at step five, based on the VE's opinion, that there exists other work available in significant numbers in the national economy consistent with Delesa's vocational profile and RFC (Addresser, Document Preparer, and Printed Circuit Board Assembly Screener) and therefore found she was not disabled at any time between her alleged onset date and the date of the ALJ's decision.

## II. Delesa's Assertions of Error

Delesa raises three errors. First, she contends that the ALJ failed to account for her marked limitation in concentrating, persisting, or maintaining pace. Second, she contends that the ALJ failed properly to evaluate limitations in

functioning espoused by treating physicians. Third, she contends that the ALJ did not properly inquire of the vocational expert whether her opinion conflicted with information in the Dictionary of Occupational Titles.

The third assertion of error has no support at all. As the transcript from the administrative hearing shows, the ALJ in fact inquired of the VE about whether her testimony was consistent with the Dictionary of Occupational Titles. And the VE then explained the ways in which her testimony was consistent with the DOT and the ways in which her testimony was based on matters not addressed by the DOT but grounded in her professional education, training, and experience. (R. 61). There is no error to be corrected.

The court now addresses Delesa's first two arguments.

### A. The ALJ's mental functioning restrictions are supported by substantial evidence.

Delesa contends that the ALJ made an error of law by having determined, in the context of his analysis about whether Delesa met a mental health listing, that she had a marked limitation in concentrating, persisting, or maintaining pace, but also deciding that she is capable of simple, routine, repetitive tasks in a low-stress environment requiring only simple work-related decisions, few changes, and limited interactions with others. She asserts that Seventh Circuit case law *requires* a finding that a claimant who is found in the step three listing-analysis context to be even moderately limited (let alone markedly limited) in concentration, persistence, or pace cannot perform simple, routine, repetitive tasks in the work environment the ALJ assigned to her (low stress without fast-paced production requirements and

7

simple decisions and few workplace changes).  But neither of the two cases Delesa relies on, *Varga v. Colvin,* 794 F.3d 809 (7th Cir. 2015), and *Yurt v. Colvin,* 758 F.3d 850 (7th Cir. 2014), establishes any such rule of law.  Rather, in each decision, the court held that the ALJ had not sufficiently explained how the claimant's particular difficulties with concentration, persistence, or pace ("CPP") were accommodated by restrictions to simple, routine, repetitive work.  In both *Varga* and *Yurt,* the court followed the proper standard of review requiring affirmance when the ALJ's decision is supported by substantial evidence (*i.e.,* that adequate to support the conclusions reached), but found the ALJ's RFC finding without substantial evidentiary support because there was no logical tie between the evidence about the ways in which the claimant's difficulties with CPP manifested themselves and the limitations in the RFC.

In *Yurt,* the RFC limited the claimant to "unskilled tasks without special considerations," but there was no explanation within the ALJ's decision how specific CPP limitations provided by a medical expert (moderate limitations in performing at a consistent pace, keeping a schedule, being punctual, and completing a normal work day and work week) were consistent with an RFC limitation to "unskilled tasks without special consideration." *See* 758 F.3d at 857-59.  In *Varga,* the ALJ also did not explain how specific manifestations of moderate CPP limits for the claimant, as opined by a state reviewing physician, were consistent with unskilled work performed in an environment that did not require fast-paced production and had few work place changes and limited interaction with others—and the

8

connection between the specific limits and the work RFC was not obvious. *See* 794 F.3d at 814-16.

Delesa is wrong to suggest that the Seventh Circuit—or any court—has established as a matter of law that a Social Security disability claimant's CPP limits, if ever expressed as "moderate" or "marked," are necessarily inconsistent with simple, routine, repetitive work, with few (if any) workplace changes and highly limited interactions with others. Indeed, the mental disorders listings in the Listing of Impairments would forbid any such court-imposed *law* because, in general, a mental health listing is not met unless a claimant has an "extreme" limitation in one of the four broad areas of functioning or a "marked" limitation in at least two of those broad areas. The broad area of CPP functioning represents only one of the four areas assessed at step three. *See* the definitional criteria in Listing 12.00A. If a court were to rule that a marked limitation in CPP is never consistent with work at the relatively bottom-of-the-scale mental functioning work environment, like that imposed by the ALJ in this case, then the court essentially would be imposing its own listing criteria inconsistent with Agency regulations.

The key—as always—is whether the ALJ has provided a sufficient explanation in his decision connecting the claimant's particular difficulties with the accommodations provided in the RFC. Delesa has not identified any specific shortcoming in this aspect of the ALJ's decision. As the Commissioner points out, and Delesa has done nothing to rebut, the ALJ's assigning of the "marked" descriptor to CPP for purposes of the step three listing analysis is *not* an RFC

assessment anyway but is a data point as part of the ALJ's overall rating of the severity of the claimant's mental impairment within the four broad areas of functioning.  The RFC is a different assessment from the listing analysis and for the RFC determination—as the Commissioner points out—the ALJ relied on, and cited to, evaluations of Delesa's mental functioning by the consultative psychologist, Dr. Terrell, and other evidence concerning Delesa's daily living activities.  Dr. Terrell reported that Delesa had complained about the effects of stress, but that she performed relatively well as part of the mental status examination, that her memory and cognitive abilities were intact, and that she could tolerate moderate stress.  The ALJ noted that Delesa's endurance issues stemmed from physical strength-related issues, not mental ones, and, except as addressed in Section B below, Delesa does not complain that her physical problems are not sufficiently accounted for in the RFC.  The ALJ addressed that Delesa's general life activities were not indicative of minimal capacities to adapt to changes.  He described the contents of various mental health records (Delesa periodically saw a counselor throughout a one-year period or so preceding the hearing that she was working on sobriety), and noted that Delesa's irritability, anxiousness, and depression were greatly affected by specific life-stressors.  He acknowledged that Delesa complained of panic attacks, and he specifically provided that her work must be low-stress and not require anything but simple decision-making and without any contact with the public and very limited contact with coworkers and supervisors.

In short, the court is able to follow the path of the ALJ's reasoning from evidence to limitations in the RFC, and the limitations are supported by substantial evidence. The court rejects Delesa's argument that no matter the evidence or the contents of an ALJ's decision, a court must find that anyone assigned a "marked" (or "moderate") level of difficulties with CPP cannot perform unskilled work in a low-stress environment as described by the ALJ.

### B. The ALJ adequately explained why he did not include certain physical limitations.

Delesa also asserts that the ALJ erred by not including within the RFC certain physical limitations described in medical records of a treating physician group. The court finds, however, that the ALJ adequately evaluated these limitations and explained how they were sufficiently accommodated within his RFC.

On June 6, 2016, Delesa was seen by a nurse practitioner within the King's Daughters' Medical Group because of swelling in her legs. The NP's report, which was electronically signed a month later by a physician, noted potential factors contributing to that swelling and actions Delesa could take including, among other things, "[e]levat[ing] her legs when possible." About nine months later, Delesa was seen by a doctor with the same Medical Group because of knee pain and the discovery during recent vein surgery that she had a Baker's cyst[2] on the back of one knee. The doctor aspirated the cyst, removing the fluid (R. 406), and had a "long

---

[2] "A Baker's cyst is a fluid-filled cyst that causes a bulge and a feeling of tightness behind your knee." https://www.mayoclinic.org/diseases-conditions/bakers-cyst/symptoms-causes/syc-20369950.

11

discussion" with Delesa about activity modification for treating knee arthritis. The report states: "We discussed avoiding activities that involve deep knee flexion, prolonged standing, or prolonged sitting without rest. We discussed avoiding stairs climbing when possible. We discussed the use and role of non-loadbearing exercise such as bicycling, swimming, and the elliptical trainer." *Id.* This report says nothing about swelling except at the knee and nothing about elevation of legs when possible.

      The ALJ addressed both of these records, from June 2016 and March 2017. He explained that he did not include leg elevation as part of an RFC because that limitation, as described in the June 2016 report as elevation "whenever possible," was "fleeting and nondescript." (R. 22). The court finds that that assessment is a reasonable one to make; advice to do something "whenever possible" need not be equated to an opinion that that *must* be done at all times. No doctor or other medical provider opined that Delesa should not work unless she keeps her legs elevated. With respect to the March 2017 record, the ALJ explained that the doctor's comments to avoid prolonged standing, prolonged sitting without rest, deep knee flexion, and stairs climbing when possible were made in conjunction with his having aspirated her knee and that, in fact, his RFC fairly accommodated the doctor's advice by severely limiting the amount of standing and walking Delesa can do during an 8-hour work day (only up to 2 hours), ensuring that she takes a 10-15 minute rest break every two hours in addition to a 30-minute lunch break, limiting any stair climbing to occasionally only, forbidding any kneeling or crawling, and

ensuring that she is permitted to change positions every 15-30 minutes during the work day. (R. 16).

The court finds that the ALJ more than adequately addressed the physical limitations listed in these two medical records and provided good reasons for giving the weight that he did to these opinions. There is no error here to support remand.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Delesa is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: July 31, 2019

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system